Filed 3/30/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ANTOINE-DESHAWN NEWT,<br><br>    Defendant and Appellant. | A169899<br><br>(Contra Costa County Super. Ct. No. 042300101) |


**INTRODUCTION**

Defendant Robert Antoine-Deshawn Newt appeals his felony conviction of receiving a large-capacity magazine (Pen. Code, § 32310, subd. (a)).[1]  He advances three claims on appeal: no substantial evidence supports the conviction; the jury was erroneously instructed on the crime; and the statute is unconstitutional.

His first two claims turn on the statute's use of the terms "receives" and "possesses."  Subdivision (a) of section 32310 provides that any person who "receives" a large-capacity magazine commits a crime punishable as a felony or misdemeanor.  Subdivision (c) provides that any person who "possesses" a large-capacity magazine also commits a crime, but such crime is punishable only as a misdemeanor or infraction.  (§ 32310, subd. (c).)

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

Defendant acknowledges the prosecution presented evidence that he "possessed" a large-capacity magazine—namely, that an assault rifle with a large-capacity magazine was found on the front seat of the car he was driving while he attempted to avoid a traffic stop and from which he subsequently fled. However, he maintains the prosecution presented no evidence beyond mere "possession" and therefore his conviction for felony "receiving" the large-capacity magazine cannot stand. He relatedly argues the jury was not properly instructed on the distinction between "receiving" and "possessing" such a magazine.

The Attorney General does not dispute that section 32310, subdivision (a) subjects a person who "receives" a large-capacity magazine to punishment as a felony or misdemeanor, whereas subdivision (c) subjects a person who "possesses" such a magazine to punishment as a misdemeanor or infraction. Rather, the Attorney General urges there is sufficient evidence supporting defendant's conviction of "receiving" a large-capacity magazine.

As both parties seemingly agree, and as we shall explain, section 32310 does, indeed, draw a distinction between "receiving" and "possessing" a high-capacity magazine. We further agree with defendant that the record here supports only a conviction for "possessing" a large-capacity magazine under section 32310, subdivision (c). We therefore need not, and do not, reach his claim of instructional error or his claim section 32310 is unconstitutional.

## DISCUSSION[2]

### *"Receiving" and "Possessing" A High-Capacity Magazine*

Section 32310 was added to the Penal Code in 2010 as part of a sweeping reorganization of a host of California Penal Code statutes.

---

[2] Because the issues pertinent to our disposition largely present questions of law, we dispense with an initial overview of the case and discuss

2

(Nonsubstantive Reorganization of Deadly Weapon Statutes (June 2009) 38 Cal. Law Revision Com. Rep. (2009) pp. 897–898 <https://clrc.ca.gov/pub/Printed-Reports/Pub233.pdf> [as of Mar. 30, 2026].) The new statute became effective January 1, 2012 (Stats. 2010, ch. 711, § 6, see Legis. Counsel's Dig., Sen. Bill No. 1080 (2009–2010 Reg. Sess.)) and stated as follows:

> "Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing January 1, 2000, any person in this state who *manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends*, any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or in the state prison."  (Italics added.)

Notably, the statute did not include any person who "receives" a high-capacity magazine.  Rather, it included only persons on the production or transmitting side of a high-capacity magazine transaction—namely, a person who "manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends" a large-capacity magazine—and made the crime a wobbler, allowing for punishment as a felony or misdemeanor.  (Stats. 2010, ch. 711, § 6, see Legis. Counsel's Dig., Sen. Bill No. 1080 (2009–2010 Reg. Sess.).)

The following year, the statute was, for purposes of this case, amended in two significant respects.  (Stats. 2013, ch. 728, § 1, see Legis. Counsel's Dig., Assem. Bill No. 48 (2013–2014 Reg. Sess.).)  The original statutory language was placed in a new subdivision, subdivision (a), and the list of persons subject to prosecution under that subdivision was expanded to include "any person . . . who . . . *buys, or receives*" a high-capacity magazine.

---

pertinent facts and procedural history in connection with our discussion of the issues raised on appeal.

3

(Stats. 2013, ch. 728, § 1, italics added.)  The amending legislation also added a new subdivision, subdivision (b), defining the term " 'manufacturing' " of a high-capacity magazine.  (*Ibid.*)  The amended statute became effective January 1, 2014, and read:

> "(a) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing January 1, 2000, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, . . . lends, *buys, or receives* any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170.
>
> "(b) For purposes of this section, 'manufacturing' includes both fabricating a magazine and assembling a magazine from a combination of parts, including, but not limited to, the body, spring, follower, and floor plate or end plate, to be a fully functioning large-capacity magazine."  (Italics added.)

Thus, the statute now reached persons on both sides of a high-capacity magazine transfer.  It reached those on the transmitting side, i.e., those "who manufacture[] or cause[] to be manufactured, import[] into the state, keep[] for sale, or offer[] or expose[] for sale, or who give[]" a high-capacity magazine, as well as those on the receiving side, i.e., those who "buy[], or receive[]" such a magazine.  (Stats. 2013, ch. 728, § 1.)  And regardless of which side of the transaction the person was on, their conduct was punishable as a felony or a misdemeanor.

In 2016, the statute was amended by both statute and initiative to its present form.  (Stats. 2016, ch. 58, § 1, see Legis. Counsel's Dig., Sen. Bill No. 1446 (2015–2016 Reg. Sess.) eff. Jan. 1, 2017; Initiative Measure (Prop. 63, § 6.1, approved Nov. 8, 2016, eff. Nov. 9, 2016.)  The most significant of the amendments for purposes of this case was the addition of a new

4

subdivision making "possession" of a high-capacity magazine a misdemeanor or infraction. Thus, the statute now provides:

> "(a) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, *buys, or receives* any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170.
>
> "(b) For purposes of this section, 'manufacturing' includes both fabricating a magazine and assembling a magazine from a combination of parts, including, but not limited to, the body, spring, follower, and floor plate or end plate, to be a fully functioning large-capacity magazine.
>
> "(c) Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing July 1, 2017, any person in this state who *possesses* any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, or is guilty of a misdemeanor punishable by a fine not to exceed one hundred dollars ($100) per large-capacity magazine, by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.
>
> "(d) Any person who may not lawfully possess a large-capacity magazine commencing July 1, 2017 shall, prior to July 1, 2017:
> (1) Remove the large-capacity magazine from the state;
> (2) Sell the large-capacity magazine to a licensed firearms dealer; or
> (3) Surrender the large-capacity magazine to a law enforcement agency for destruction." (§ 32310, subds. (a)–(d), italics added.)

"Our fundamental task in construing statutes is to interpret them in a way that gives effect to the Legislature's intent. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837. . . .)

' "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." ' (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105. . . .) We consider the statutory language in the context of the statute as a whole and its overall scheme.  (*People v. Lewis* [(2021)] 11 Cal.5th [952,] 961; *People v. Valenzuela* (2019) 7 Cal.5th 415, 423. . . .)"  (*People v. Guzman* (2025) 115 Cal.App.5th 464, 476 (*Guzman*).)

"If the statute's language is unambiguous then its plain meaning controls.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1421. . . .)  If the statute's language is unclear, ambiguous, or susceptible to more than one reasonable interpretation, we may look at extrinsic sources, including legislative history, as a guide to construing the statute.  (*Ibid.*)"  (*Guzman, supra,* 115 Cal.App.5th at p. 476.)

Given the statutory language we have just quoted, and the chronology in which it was enacted, it is readily apparent the Legislature knowingly chose to use different terminology in subdivisions (a) and (c) of section 32310.  Subdivision (a), in which the original substantive language of the statute is ensconced, applies to any person who "receives" a high-capacity magazine, whereas subdivision (c), enacted several years later, applies to any person who "possesses" such a magazine.  We generally must presume that when the Legislature chooses to use differing terms in the same statutory scheme, the terms have different meanings.  (See *People v. Smith* (2024) 100 Cal.App.5th 741, 760 (*Smith*) [" ' "Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning." ' "  Quoting *Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352.].)

Thus, were we considering the terms "receives" and "possesses" generally and outside the statutory context we are considering here, we might be hard pressed to explain how the two terms differ in any material way, as it could be said any person who "possesses" an item must, at some point, have "received" it. However, we must consider these terms both in their immediate context, as well as the overall statutory scheme of which they are a part. (See *Smith, supra,* 100 Cal.App.5th at p. 757 ["[b]ecause 'words used in a statute are not considered in isolation,' we construe the language of a statute 'in context,'" quoting *Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1158].)

When so considered, it is apparent section 32310, subdivision (a) was originally aimed, and remains aimed, at those who participate in the manufacturing of, or some kind of exchange involving, high-capacity magazines, whereas subdivision (c) was aimed, and remains aimed, at simpler conduct the Legislature considers less culpable, i.e., mere possession.

As we have recited, section 32310 initially criminalized only the conduct of those persons who were on the manufacturing or transmitting side of a high-capacity magazine transaction—that is, any person "who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends, any large-capacity magazine." (Stats. 2010, ch. 711, § 6, see Legis. Counsel's Dig., Sen. Bill No. 1080 (2009–2010 Reg. Sess.).) The Legislature subsequently amended this list to also include any person who "buys, or receives" a large-capacity magazine. (Stats. 2013, ch. 728, § 1, see Legis. Counsel's Dig., Assem. Bill No. 48 (2013–2014 Reg. Sess.).) Thus, as of 2014, section 32310, subdivision (a) criminalized the conduct of anyone involved in the production or transfer

of a high-capacity magazine—regardless of which side of the exchange they were on.

Several years later, through an initiative measure and further legislative action, the scope of the statute was enlarged with the addition of the language that now appears in section 32310, subdivision (c) and criminalizes the conduct of any person "who possesses" a high-capacity magazine.[3] (Stats. 2016, ch. 58, § 1, see Legis. Counsel's Dig., Sen. Bill No. 1446 (2015–2016 Reg. Sess.).) Unlike section 32310, subdivision (a), subdivision (c) does not list any other persons engaging in any other conduct in connection with a high-capacity magazine. Thus, it includes no list of persons engaged in the manufacturing or transfer of a high-capacity magazine. Rather, section 32310, subdivision (c) refers only to a person who engages in a singular act, i.e., a person who "possesses" a large-capacity magazine. And whereas any of the conduct enumerated and criminalized by section 32310, subdivision (a) was, and continues to be, punishable as a felony or misdemeanor, the conduct criminalized by subdivision (c) was, and continues to be, punishable as a misdemeanor or an infraction. Thus, the Legislature plainly considered "possession" of a high-capacity magazine, alone, to be different from, and less serious than, any of the manufacturing or transactional conduct criminalized under section 32310, subdivision (a).

The legislative history, and particularly the history of the 2016 amendments adding the language now appearing in subdivision (c), reinforces what is apparent from the language and structure of the statute. By the time section 32310 was amended in 2016, the list of persons subject to

---

[3] At the time of enactment, the new language was placed in section 32310, subdivision (b). The definition of " 'manufacture,' " then in subdivision (b), was relocated to a new subdivision, subdivision (d). (Stats. 2016, ch. 58, § 1.)

prosecution under subdivision (a) had, as we have discussed, been expanded to include "any person . . . who . . . *buys, or receives*" a large-capacity magazine. (Stats. 2013, ch. 728, § 1, italics added.) Yet, despite the inclusion in subdivision (a) of any person who "receives" a high-capacity magazine, the legislative history of the 2016 amendments is replete with statements that, at that time, the statute did *not* apply to persons who "possessed" such magazines and one of the purposes of the amendments was to make "possession" a crime. (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3rd reading analysis of Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as amended Mar. 28, 2016, p. 2 ["This bill: 1) Provides that, except as specified, commencing July 1, 2017, any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction. . . ."], *id*., p. 4 ["Since January 1, 2000, California has banned the importation, manufacturer or sale of high capacity magazines. . . . This bill imposes criminal penalties for possession of high capacity magazines in California.]; Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as amended Mar. 28, 2016, p. 1 ["*The purpose of this bill is to, commencing July 1, 2017, prohibit the possession of large-capacity magazines, as specified.*"].)

The seeming anomaly between these and other like statements in the committee reports and bill analyses of the 2016 amendments, and the by-then amended language of subdivision (a) to include any person who "receives" a high-capacity magazine, is explainable given the timing limitation of the reach of subdivision (a). The Public Safety Committee Report, for example, described existing law as follows: "*Existing law* provides that, except as specified, commencing January 1, 2000, any person in this state who manufacturers or causes to be manufactured, imports into the

9

state, keeps for sale, or offers or exposes for sale, or who gives, or lends, any large-capacity magazine is punishable," as a misdemeanor or felony." (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as amended Mar. 28, 2016, p. 2, boldface added.) The report then stated the new legislation would provide "that, except as specified, commencing July 1, 2017, any person in this state who possess any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction. . . ." (*Ibid.*) In other words, commencing July 1, 2017, any person who had come into possession of a high-capacity magazine when it was lawful to do so (e.g., prior to the amendment to subdivision (a) to include any person who "buys, or receives" such a magazine) would be subject to prosecution under section 32310, subdivision (c) if they continued to retain possession of the magazine.[4]

We also observe that, as introduced, the 2016 legislation *eliminated* the words "buys, or receives" from section 32310, subdivision (a), while adding the new prohibition against "possession" of any large-capacity magazine as of July 1, 2017, regardless of when it was acquired. (Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as introduced Feb. 19, 2016, § 3.) Had the language "buys, or receives" remained excluded from section 32310, subdivision (a), one could conclude the Legislature considered these terms embraced by the new term

---

[4] We note that the Senate Rules Committee Report erroneously stated "Existing law: [¶] . . . [¶] Provides that, except as specified, commencing January 1, 2000, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends, any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment for 16 months, two or three years pursuant to Penal Code Section 1170(h)." (Sen. Rules Com., Rep. on Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as amended Mar. 28, 2016, pp. 1–2.) The report did not, in other words, state existing law also included "any person who buys or receives" a large-capacity magazine.

"possesses" in subdivision (c), and to have viewed receiving and possessing such a magazine to be wrongful conduct of equal consequence and warranting punishment only as an infraction or misdemeanor under subdivision (c).

But in the first round of amendments to the proposed legislation, the reference to any person who "buys, or receives" a large-capacity magazine was restored to the list of persons included in subdivision (a), and subject to punishment as a felony or misdemeanor. (Sen. Bill No. 1446 (2015–2016 Reg. Sess.) as amended Mar. 28, 2016, § 1.) It is therefore clear the Legislature understood "receives" as used in section 32310, subdivision (a) and "possesses" as used in subdivision (c) to mean different kinds of conduct and considered "receiving" a high-capacity magazine (prohibited by § 32310, subd. (a)) to refer to conduct more egregious than, and thus subject to stiffer punishment than, merely "possessing" such a magazine (prohibited by § 32310, subd. (c)).

We need not in this case flesh out the extent of the evidentiary showing required to support a conviction for "receiving" a high-capacity magazine under section 32310, subdivision (a). It is enough for purposes of this case to say there must be some evidence beyond that the defendant possessed such a magazine. That is, there must be some evidence as to the provenance of the high-capacity magazine—e.g., that the defendant bought or received it after January 1, 2000, from a person who manufactured the magazine, imported it into the state, kept the magazine for sale, offered it for sale, or who gave or lent it to him. There is no such evidence in the record here. In short, there is no evidence as to how or when defendant came to possess the high-capacity magazine.

The Attorney General maintains there is sufficient evidence to support the conviction, asserting "[a]n item is received when a person takes

possession and control of it," citing CALCRIM No. 1750, which defines the term "received" for purposes of the crime of receiving stolen property. However, as we have discussed at length, that is not how the Legislature views the distinction between "receiving" and "possessing" a large-capacity magazine for purposes of section 32310, subdivisions (a) and (c).

The Attorney General next asserts the "extreme measures" defendant took to avoid apprehension (leading officers on a high-speed chase and then attempting to flee by foot) "demonstrates his consciousness of guilt of a more serious crime than mere possession of a large-capacity magazine." The defendant's "consciousness" has no bearing on whether there was evidence that he "receive[d]" the high-capacity magazine as that term is used in section 32310, subdivision (a), as opposed to merely "possesse[d]" the magazine as that term is used in subdivision (c). Indeed, defendant committed numerous crimes at the time and could have had a collective consciousness he would be facing some kind of felony sentence. In any event, it is also sheer speculation to ponder what defendant's consciousness might have been.

Lastly, the Attorney General asserts there was "sufficient evidence that [defendant] received the magazine within the relevant time period." While it may be true the limitations period for the crime had not run, that, again, has no bearing on whether he "receive[d]" the high-capacity magazine as that term is used in section 32310, subdivision (a), or whether he simply "possesse[d]" it as that term is used in subdivision (c). The same is true for the Attorney General's assertion that there was evidence that in July 2022 defendant purchased the car in which he tried to evade a traffic stop. He posits the jury "could reasonably have concluded that at some point after that purchase, [defendant] came into possession or control of the large-capacity

12

magazine and placed it inside the vehicle." Again, this speculative argument has no bearing on whether defendant "receive[d]" the high-capacity magazine as that term is used in section 32310, subdivision (a), or whether he simply "possesse[d]" it as that term is used in subdivision (c).

We therefore reverse defendant's conviction of "receiving" a high-capacity magazine under section 32310, subdivision (a) for lack of substantial evidence to support it. Accordingly, we need not, and do not, reach defendant's claim of instructional error or his claim section 32310 is unconstitutional.

## DISPOSITION

Defendant's felony conviction of receiving a large-capacity magazine (Pen. Code, § 32310, subd. (a)) is reversed. In all other respects, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment, and once prepared, the clerk is directed to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

 

                                           _____

                                           Banke, J.

We concur:


_____
Humes, P.J.


_____
Langhorne Wilson, J.

A169899, People v. Newt

14

Trial Court: Contra Costa County Superior Court

Trial Judge: Hon. Rebecca C. Hardie

Counsel:

Rob Bonta, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Seth K. Schalt and Arthur P. Beever, Deputy Attorneys General for Plaintiff and Respondent

Nathaniel Miller, under appointment by the Court of Appeal, for Defendant and Appellant.